**IT IS ORDERED as set forth below:**

**Date: March 27, 2019**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE | : |
| **DEIRDRE MARIA STEPHENS, a/k/a DEIRDRE M. STEPHENS-JOHNSON**, | : CASE NO. **18-55123-PMB** |
| Debtor. | : CHAPTER 7 |
| ----------------------------------------------------------- | : |
| **MARK WANGAI** | : |
| Plaintiff, | : |
| v. | : ADVERSARY PROCEEDING NO. **18-5155** |
| **DEIRDRE M. STEPHENS-JOHNSON**, | : |
| Defendant. | : |
| ----------------------------------------------------------- | : |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding arises out of the Chapter 7 Bankruptcy Case of Deirdre M. Stephens-Johnson (the "Debtor"), Case No. 18-55123-PMB (the "Bankruptcy Case"). Plaintiff

Mark Wangai (the "Plaintiff") filed his complaint (the "Complaint") against the Debtor seeking a determination that certain debts owed to him by the Debtor are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (6) of the United States Code (the "Bankruptcy Code")[1] and objecting to the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), and (5) of the Bankruptcy Code.[2] This matter is a core bankruptcy matter over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I) and § 1334.  Venue is proper pursuant to 28 U.S.C. § 1409.

Plaintiff served the Complaint in this Adversary Proceeding on the Debtor on June 29, 2018 and filed proof of that service with the Court on July 3, 2018. (Docket No. 3). The Debtor has not filed a response to the Complaint. (Docket, *passim*). Plaintiff requested entry of a default from the Clerk (Docket Nos. 4, 5, & 7). The Clerk entered the default September 27, 2018. On October 29, 2018, Plaintiff filed his Motion for Default Judgment (Docket No. 8)(the "Motion") seeking a default judgment[3] that a debt of $96,371.38 owed by the Debtor to Plaintiff (the "Debt"), as determined by the Superior Court of Fulton County, Georgia (the "Superior Court"), is excepted from discharge pursuant to Section 523(a)(4) as a debt "for fraud or defalcation while acting in a fiduciary capacity" and Section 523(a)(6) as a debt "for willful and malicious injury by debtor…." No response to the Motion has been filed by the Debtor, and therefore the Motion is deemed unopposed pursuant to Bankruptcy Local Rule BLR 7007-1(c).

---

[1] All statutory references herein are to the Bankruptcy Code unless otherwise indicated.

[2] The Plaintiff in the Motion does not seek a default judgment on these counts. In the Motion, the Plaintiff states that if Plaintiff's requested relief pursuant to 11 U.S.C. §§ 523(a)(4) and (6) is granted, he will file a motion to dismiss the claims made pursuant to 11 U.S.C. § 727 on notice to all parties pursuant to Federal Rule of Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure 41. Consequently, these counts are not addressed in this Order.

[3] Plaintiff moves for default judgment; however, given the reliance on decisions of earlier state court proceedings and the nature of the argument set forth in the Motion and accompanying Memorandum of Law (Docket No. 9), consistent with the Plaintiff's prayer for relief in the Complaint, the Motion is construed as a motion for summary judgment.

### I.  Summary Judgment Standard

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable in adversary proceedings. Fed.R.Bankr.P.7056. Summary judgment is granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); McCaleb v. A.O. Smith Corp., 200 F.3d 747, 750 (11th Cir. 2000). The Court views all evidence and reasonable factual inferences in the light most favorable to the nonmoving party. Burton v. Tampa Housing Auth., 271 F.3d 1274, 1277 (11th Cir. 2001). Pursuant to BLR 7056-1(a)(1), the party seeking summary judgment must submit a "statement of the uncontested facts…as to which the movant contends there is no genuine issues to be tried[.]" Likewise, if the respondent contests any of the facts, it must file a "statement of the material facts…as to which [it] contends that there exists a genuine issue to be tried[.]" BLR 7056-1(a)(2). If the respondent fails to file a response, all the facts in the movant's statement "may be deemed admitted[.]" BLR 7056-1(a)(2). In this case, Plaintiff argues he is entitled to summary judgment on the ground of collateral estoppel based on the state court judgments for damages for breach of fiduciary duty and for punitive damages for willful and malicious injury.[4]

### II.  The Superior Court Judgments

On August 5, 2015, Plaintiff filed a lawsuit against the Debtor, an attorney, the Debtor's single-member law firm, The Law Office of Diedre M. Stephens-Johnson, LLC (the "Debtor's Law Firm"), and two of the Debtor's clients, Bryan Bowden ("Bowden") and Bowden Group

---

[4] *See* Adversary Complaint, p. 9, para. 25 and p.11, para. 29.

3

Corporation ("BGC"), in the Superior Court of Fulton County, Georgia, Civil Action File No. 2015cv264162 (the "Superior Court Action").[5]

On November 19, 2015, the Superior Court entered an order holding the Debtor in default for failing to timely file any responsive pleadings to the Superior Court Action.[6] On January 28, 2016, the Superior Court held a hearing to determine and award damages to Plaintiff regarding Plaintiff's claim for breach of fiduciary duty, including the associated claims for attorney's fees, litigation costs and expenses, and punitive damages.[7] The Debtor appeared at that hearing on behalf of the defendants in the Superior Court Action, including herself and the Debtor's Law Firm. On March 11, 2016, the Superior Court entered a judgment (the "Fiduciary Duty Judgment") awarding a default judgment against the Debtor and the Debtor's Law Firm and entitling Plaintiff to $96,371.38[8]—*i.e.*, the Debt.[9]

On July 8, 2016, the Superior Court entered a second order holding the Debtor jointly and severely liable with the other defendants on claims of conversion, conspiracy, conspiracy to commit breach of fiduciary duty, and money had and received.[10] The Superior Court awarded a

---

[5] *See* certified copy of Verified Complaint, attached as Ex. A, p.18 to the Adversary Complaint.

[6] *See* certified copy of Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

[7] *Id.*

[8] The total amount of $96,371.37 is comprised as follows: (1) $48,750.00 for Plaintiff's liquidated claim for breach of fiduciary duty as set forth in Plaintiff's Verified Complaint; (2) $2,412.12 for prejudgment interest from the date of demand (May 15, 2015) through the date of the hearing (January 28, 2016); (3) $10,209.26 for reasonable and necessary attorney's fees and litigation costs and expenses to Plaintiff arising out of bad faith, stubborn litigiousness and unnecessary trouble and expense caused by Debtor and Debtor's Firm; (4) $35,000.00 as an award of punitive damages to Plaintiff arising out of actions by Debtor and Debtor's Firm that were intentional, unlawful, oppressive and malicious, and show a wanton and willful disregard for the consequences of their actions, and with specific intent to cause harm.

[9] *See* certified copy of Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

[10] *See* certified copy of State Summary Judgment, attached as Ex. C to the Adversary Complaint.

judgment against the Debtor and the other defendants entitling Plaintiff to $48,750.00 for the liquidated claim for breach of fiduciary duty, and $2,412.12 for pre-judgment interest (the "State Summary Judgment; with the Fiduciary Duty Judgment, the "Superior Court Judgments"). The liquidated claim and pre-judgment interest had previously been included in the Fiduciary Duty Judgment; the State Summary Judgment provided that this award is not to be construed as double recovery.[11] Two years later, the Debtor commenced this Chapter 7 proceeding.

In the Superior Court Judgments, the Superior Court made the following relevant determinations:

- The Debtor and the Debtor's Law Firm stood in a fiduciary relationship with Plaintiff.[12]

- The Debtor and the Debtor's Law Firm owed Plaintiff a fiduciary duty.[13]

- The Debtor and the Debtor's Law Firm breached their fiduciary duty.[14]

- Plaintiff is entitled to $48,750.00 for the liquidated claim for breach of fiduciary duty (the "Liquidated Claim" or the "Earnest Money Deposit").[15]

- The Debtor acted in bad faith.[16]

---

[11] *Id.*

[12] *See generally* Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

5

- Plaintiff is entitled to summary judgment and judgment as a matter of law on the counts of conversion, conspiracy, conspiracy to commit conversion, conspiracy to commit breach of fiduciary duty and money had and received.[17]

- The Debtor and the Debtor's Law Firm are jointly and severally liable for conversion, conspiracy to commit conversion, conspiracy to commit breach of fiduciary duty, and money had and received.[18]

- The Debtor's actions were intentional, unlawful, oppressive and malicious.[19]

- The Debtor's actions reflected a wanton and willful disregard for the consequences of her actions, and with a specific intent to cause harm, and as a result, Plaintiff was entitled to an award of punitive damages.[20]

### III. Analysis

In the present case, Plaintiff relies on the preclusive effect of the Superior Court Judgments to establish the grounds of non-dischargeability. Plaintiff's theory is that the Superior Court Judgments satisfy two grounds for non-dischargeability: the exception in 11 U.S.C. § 523(a)(4) as a debt for fraud or defalcation while acting in a fiduciary capacity and the exception in 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury. Plaintiff asserts that applying the doctrine of collateral estoppel to the Superior Court Judgments establishes the elements of Section 523.[21] Accepting the undisputed facts from the Adversary Complaint and the conclusions of law

---

[17] *See generally*, State Summary Judgment, attached as Ex. C to the Adversary Complaint.

[18] *Id.*

[19] *Id.*

[20] *See generally*, Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

[21] *See* Adversary Complaint, p. 9, para. 25 and p.11, para. 29.

6

established by the Superior Court in the Superior Court Judgments, we determine that the doctrine of collateral estoppel applies to Plaintiff's two counts for damages for breach of fiduciary duty and for punitive damages for willful and malicious injury and the Debt arising from the two counts are non-dischargeable pursuant to Sections 523(a)(4) and (6).

### A.     Collateral Estoppel

Collateral estoppel bars relitigation of an issue decided adversely to a litigant in a previous action if the issue was litigated in the previous action and was essential to the judgment. As the Supreme Court has explained, "[c]ollateral estoppel … has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 438 U.S. 322 (1979). It is well established that the doctrine of collateral estoppel is applicable to bankruptcy dischargeability cases. In re Barzegar, 189 B.R. 864 (Bankr. N.D. Ga. 1995). Specifically, a default judgment issued by a state court may have collateral estoppel effect in a bankruptcy proceeding to prevent relitigation of issues underlying the determination of dischargeability. *See* In re Bush, 62 F.3d 1319, 1322-25 (11th Cir. 1995).

In determining whether a state court judgment is entitled to collateral estoppel effect in dischargeability litigation, a bankruptcy court applies the preclusion law of the forum in which the judgment was entered. Hebbard v. Camacho, 411 B.R. 496, 501 (Bankr. S.D. Ga. 2009). The Eleventh Circuit has explained that under Georgia law, the application of collateral estoppel requires the moving party to establish five elements: (1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair

7

opportunity to litigate the issues in question. In re Lemmons, 2005 WL 6487216, *4 (Bankr. N.D. Ga. Dec. 20, 2005).

*Identity of the parties*

There is no dispute that the Plaintiff and the Debtor were both parties in the Superior Court Action and are both parties in the instant action. The fact that the Superior Court Action named other co-defendants not being pursued in the instant matter is irrelevant. Courts have concluded under the rules of issue preclusion, "the fact that the parties are not precisely identical is not necessarily fatal." *See* Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381 (1940). Even though the instant action only involves the Debtor individually while the Superior Court Action included other parties, the final orders and judgments in the Superior Court Action named the Debtor.[22] Moreover, the Superior Court Judgments did not include findings that the other defendants and their actions played any role in the ultimate findings against the Debtor.[23] Finally, only Diedre M. Stephens-Johnson is a debtor and it is only as to her that dischargeability has been raised. (Docket No. 1). Therefore, the identity of the parties prong of collateral estoppel is satisfied.

*Identity of the Issues*

The second consideration in deciding whether the application of collateral estoppel is appropriate is whether the issues in the prior litigation and the issues in the current litigation are identical. In re Dixon, 525 B.R. 827 (Bankr. N.D. Ga. 2015). This question addresses "'whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation]; [and] whether controlling facts or legal principles have [not] changed significantly

---

[22] *See generally,* Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint; *see generally,* State Summary Judgment, attached as Ex. C to the Adversary Complaint.

[23] *Id.*

8

since the [prior litigation]….'" 525 B.R. at 836 (citations omitted).  This prong is examined below in the discussion of the requirements of 11 U.S.C § 523.

*Actual and Final Litigation*

The next prong of collateral estoppel analysis is whether the matter has been actually litigated.  "Georgia case law does not disclose any analytical framework for determining whether a matter was actually litigated.  However, 'as a general rule, when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and it is determined, that question of fact has been "actually litigated."'" Lusk v. Williams, 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002)(citations omitted).  Georgia law recognizes a default judgment as a judgment on the merits entitled to preclusive effect.  McKelvy v. Murray, 2009 WL 6527593, *2 (Bankr. N.D. Ga. Sept. 18, 2009).  Here, in addition to the default judgment, the Superior Court held a hearing and determined Plaintiff proved his damages for breach of fiduciary duty and malicious injury resulting in the issuance of the Fiduciary Duty Judgment.  Therefore, the matters determined by the Superior Court were actually litigated and this prong of collateral estoppel is satisfied.

*Essentiality, and Full and Fair Opportunity to Litigate*

Lastly, it is clear that the issues underlying the Superior Court Judgments were essential to the Superior Court Action, since their resolution resulted in final judgments.  The full and fair opportunity to litigate the issues in state court is rooted in due process concerns.  Microfinancial, Inc. v. Delpiano, 2005 WL 6488906, *5 (Bank. N.D. Ga. Mar. 22, 2005).  A party must be given an opportunity to appear and to participate in the defense of the suit.  In re Blonder, 2015 WL 5773230, *11 (Bankr. N.D. Ga. Sept. 28, 2015).  In the instant matter, the Debtor has offered no evidence to the Court supporting an argument of failure of due process, which would preclude satisfaction of the full and fair opportunity prong by this Court.  To the contrary, the documents

9

submitted by Plaintiff indicate that the Debtor had every opportunity to litigate the issue of liability on which a default was granted.

On January 28, 2016, the Superior Court conducted a hearing, which resulted in its subsequent entry of default on February 23, 2016, because the Debtor failed to timely file any responsive pleadings or failed to pay the costs to open the default as required by O.C.G.A. § 9-11-55.[24] On May 18, 2016, the Superior Court entered default on Plaintiff's Motion for Partial Summary Judgment; this was approximately three months after Plaintiff filed the Motion and after the Debtor failed to timely respond."[25] After entry of default, the Debtor and the Debtor's Law Firm appealed the Superior Court Judgments to the Georgia Court of Appeals; however, the appeal was dismissed on September 22, 2016, after the Debtor failed to file her brief after being notified by the Court that a dismissal would result if she failed to do so.[26] Other the Debtor's own failures, nothing prevented her from arguing her case to completion. Moreover, the Debtor appeared at a hearing on damages associated with the default where the Superior Court addressed each claim and determined that Plaintiff proved his damages.[27]

The Debtor and the Debtor's Law Firm were provided an opportunity to litigate liability, to appear and present evidence to refute damages at a hearing, and to determine the amount of damages. Thus, the full and fair opportunity to litigate prong has been satisfied. Although the collateral estoppel effect of a state court judgment may bar bankruptcy court from relitigating factual issues previously decided in state court, the ultimate issue of a debt's dischargeability is a

---

[24] *See generally* Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

[25] *See generally* State Summary Judgment, attached as Ex. C to the Adversary Complaint.

[26] *See* Adversary Complaint, p. 6, para.13.

[27] *See generally* Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

10

legal question to be addressed by the bankruptcy court.  In re Rachel, 527 B.R. 529, 539 (Bankr. N.D. Ga. 2015).

### B. Non-Dischargeability Pursuant to 11 U.S.C. § 523(a)(4)

Plaintiff asserts first that his claim against the Debtor is non-dischargeable because it is a debt for Debtor's fraud or defalcation while acting in a fiduciary capacity.  To establish a debt is non-dischargeable under Section 523(a)(4), a party must demonstrate: (1) the debtor held a position as a fiduciary; (2) the claim arose while acting in a fiduciary capacity; and (3) the conduct rose to the level of a defalcation.  Caitlin Energy, Inc. v. Rachel, 527 B.R. 529, 540 (Bankr. N.D. Ga. 2015).

The underlying Fiduciary Duty Judgment contains a conclusion of law that the Debtor and the Debtor's Law Firm were collectively acting as a fiduciary to Plaintiff.[28]  The fact that a relationship is characterized as fiduciary under state law does not necessarily mean that it is a fiduciary relationship within the meaning of Section 523(a)(4).  The traditional meaning of fiduciary under state law—loyalty, good faith and fair dealing—is too broad for the purposes of Section 523.  Federal law narrowly defines the concept of "fiduciary relationship" to include only relationships involving an express or technical trust.  Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993).  Thus, to qualify under Section 523(a)(4) there must be an express or technical trust imposing trustee-like obligations upon the Debtor. *Id.*

The fiduciary capacity alleged by Plaintiff is that the Debtor and the Debtor's Law Firm, collectively, were the Plaintiff's escrow agent.[29]  Although the meaning of the word fiduciary in Section 523 "is a question of federal law," state law can be consulted in ascertaining whether such

---

[28] *Id.*

[29] *See* Adversary Complaint, p. 4, para. 8.

11

a duty has been imposed. In re Khalif, 308 B.R. 614, 621 (Bankr. N.D. Ga. 2004). Georgia law expressly imposes a trust duty on an escrow agent. O.C.G.A § 44-3-162. Bankruptcy Courts have frequently determined escrow agents to be the type of fiduciary whose debts related to their status as an escrow agent are non-dischargeable. Auburn Dev. Corp v. Shorton, 378 B.R. 424, 430 (Bankr. D. Mass. 2007)(escrow agent is a fiduciary under 11 U.S.C. § 523(a)(4) because the agreement required the funds to be held in an IOLTA account for the parties); First Am. Title Ins. Co. v. Eberhart, 283 B.R. 97, 100–01 (Bankr. D. Conn. 2002)(relying upon the Restatement of Trusts, an escrow agent is a party to an express trust which was created when one party sent money to the escrow agent to be held); Stone v. Feldman, 111 B.R. 481, 486 (Bankr. E.D. Pa. 1990)(a depository under an escrow agreement occupies a fiduciary relationship as to the depositor for the purposes of Section 523(a)(4)).

Because it is not contested that the Debtor and the Debtor's Firm were, collectively, serving as Plaintiff's escrow agent[30], the Debtor held a position as a fiduciary for purposes of Section 523(a)(4). The fact that Superior Court found that the Debtor held a position as a fiduciary in the prior litigation mirrors the issue of the Debtor's fiduciary capacity in the instant litigation, and thus the identity of issues as to the fiduciary relationship element is satisfied.

As to the second element of the analysis, there is no doubt that Plaintiff's claim arose while the Debtor was acting in her fiduciary capacity. The Superior Court found that the claim for $48,750.00 arose solely out of the Debtor's breach of fiduciary duty while acting in a fiduciary capacity.[31]

---

[30] *Id.*

[31] *See generally* Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

12

The final question is whether the Debtor committed fraud or defalcation in her fiduciary capacity. Defalcation includes a "culpable state of mind" requirement. Bullock v. BankChampaign, N.A., 569 U.S. 267, 273 (2013). That state of mind is described as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior. *Id.* at 273-74. Defalcation targets three types of behavior: (i) where the conduct at issue involves bad faith, moral turpitude, or other immoral conduct; (ii) intentional conduct that the fiduciary knows is improper; and (iii) reckless conduct of the kind that the criminal law often treats as the equivalent of intentional. Reiss v. McQuillin, 509 B.R. 773, 788 (Bankr. D. Mass. 2014). Under Section 523(a)(4), the requisite state of mind for defalcation can be established by showing either the debtor intentionally acted wrongfully or that the debtor acted with criminal recklessness. In re Rachel, 527 B.R. 529, 544 (Bankr. N.D. Ga. 2015). An intentional wrongful act is conduct that the fiduciary knows is improper. In re Karch, 499 B.R. 903, 907 (Bankr. D. Colo. 2013). The facts show that the Debtor acted both in bad faith and with wrongful intent.

The Superior Court found that the Debtor's conduct arose out of bad faith and stubborn litigation, satisfying the requirements of defalcation.[32] Further, the Debtor, as an attorney, was aware of the scope of her fiduciary duty and knew her failure to return the earnest money was improper because the Superior Court found that the Debtor's actions showed a specific intent to harm by not doing so.[33] Because the Debtor was aware that she had a fiduciary duty, that the scope of that duty required her to return the earnest money, and she failed to do so, she acted with bad faith and with specific intent to harm, and the Debtor acted with wrongful intent when she breached her fiduciary duty. Thus, the Debtor committed defalcation while acting in a fiduciary capacity

---

[32] *Id.*

[33] *Id.*

13

pursuant to Section 523(a)(4). For the reasons set forth above, the Debt, other than the punitive damage portion thereof, is non-dischargeable under Section 523(a)(4).

### C. Non-Dischargeability Pursuant to 11 U.S.C. § 523(a)(6)

Plaintiff argues this Court should apply the doctrine of collateral estoppel to his claim under Section 523(a)(6) because the Superior Court in the Superior Court Judgments ordered punitive damages based on findings that the Debtor's actions were intentional, unlawful, oppressive and malicious, and that she showed a wanton and willful disregard for the consequences of her actions with specific intent to cause harm.[34] Section 523(a)(6) excepts from discharge "any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity." Non-dischargeability under Section 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57 (1998). To establish a willful injury, the plaintiff must show that the debtor defendant had a subjective motive to inflict injury or believed her conduct was substantially certain to cause injury. Lemmons, *supra*, 2005 WL 6487216, *5 (citing Restatement (Second) of Torts § 8A). Although the Superior Court in the Superior Court Judgments established that the Debtor injured Plaintiff and awarded $35,000 in punitive damages for the injury, the question is whether in reaching that decision the Superior Court necessarily determined that the Debtor intended to injure the Plaintiff and did so wrongfully. In re Stalnaker, 408 B.R. 440, 446 (Bankr. M.D. Ga. 2009).

In some situations, an award of punitive damages may be sufficient to show that injury giving rise to the judgment was "willful and malicious" within the meaning of the dischargeability exception. *Id.* For example, the standard for awarding punitive damages may specifically require a finding equivalent to willful and malicious injury. *Id.* Alternatively, the fact finder may state

---

[34] *Id.*

14

that its award was based on findings of willfulness and malice. *Id.* In this case, the Superior Court awarded punitive damages, and the Plaintiff offers the Fiduciary Duty Judgment to demonstrate that the Debtor's subject intent to cause injury and the probability of injury was the Superior Court's basis for making that award.[35] Further, the Superior Court's conclusion of law that the Debtor acted with specific intent to cause harm indicates that the Superior Court actually considered and determined the Debtor's subjective intent to cause injury.[36] Finally, the Fiduciary Duty Judgment expressly says the punitive damages award was made based on the Debtor's willfulness, malice and specific intent to cause harm. Because the Superior Court based its award on a finding of the Debtor's willfulness, malice and specific intent to cause harm, the punitive damages award involves a finding identical to Section 523(a)(6) and therefore prove identity of issues for purposes of collateral estoppel. For the reasons above, the punitive damages award is non-dischargeable under Section 523(a)(6).

## CONCLUSION

There are no genuine issues of material fact left to be tried on the issue of dischargeability of the entire Debt owed by the Debtor to the Plaintiff as adjudged by the Superior Court. Thus, the Plaintiff is entitled to judgment as a matter of law.

Accordingly, based on the foregoing discussion and for the reasons herein stated herein, it is

**ORDERED** that the Motion be, and the same hereby is, **granted**; and, it is further

**ORDERED** that judgment will be entered **in favor of the Plaintiff**, and against the Debtor,

---

[35] *See generally* Fiduciary Duty Judgment, attached as Ex. B to the Adversary Complaint.

[36] *Id.*

on Plaintiff's request in the Complaint that the Debt be **excepted** from discharge and declared **non-dischargeable** herein under 11 U.S.C. §§ 523(a)(4) and (a)(6)**.**

The Clerk's office is directed to serve a copy of this Order on the Plaintiff, counsel for the Plaintiff, the Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**